John, a slave v. The State

## JOHN, *a slave* v. THE STATE.

1. The Circuit Court have jurisdiction to award writs of *certiorari* to review the proceedings of inferior Courts of criminal jurisdiction.
2. Should a judge of a Circuit Court in a proper case, and where error was shown to exist, refuse to grant a remedial writ to review the proceedings of a tribunal inferior in grade to the Circuit Court, the Supreme Court would prevent a failure of justice by awarding a *mandamus* to the judge.
3. The writ of *certiorari* is the appropriate writ where a statute creating an inferior Criminal Court has provided no means to review its judgments.
4. Although the special Courts for the trial of slaves charged with capital offences, created by the act of 1832, [Aikin's Digest 124] are required to fix the time of execution of a condemned slave within a period of ten days from the sentence, yet the allowance of a *certiorari* is a *supersedeas* of the sentence, until it is quashed or the inferior tribunal directed to go on by writ of *procedendo*.
5. It is always correct to insert a special clause in a writ of *certiorari* to a criminal Court directing it to operate as a supersedeas, and if necessary, to also direct a special writ of *supersedeas* to the sheriff to delay execution until the case is heard and determined.

*Certiorari* to a special court for the trial of a Slave.

AT a previous day of this term, the counsel for the prisoner, presented a copy of the proceedings of a special court held in Lowndes county under the provisions of the act of 7th January, 1832, [Aikin's Digest 124] by which it appears that the prisoner had been convicted of the crime of murder and received sentence of death. A *certiorari* to remove the conviction into this court was prayed for and allowed, and on the return of the writ, errors were assigned, which need not be recited as no judgment is given on them.

DARGAN, for the prisoner.
THE ATTONEY GENERAL, contra.

GOLDTHWAITE, J.—1. When this *certiorari* was allow-

ed, it was supposed that this court had exercised jurisdiction of cases analogous to the one under consideration at some previous term. On examination we ascertain that no decision, bearing on the question of jurisdiction arising in this case, has ever been made by this court ; and we are satisfied that the Circuit Court, alone, has the jurisdiction to review the proceedings of inferior criminal Courts on *certiorari.*

By referring to the 3d section of the act of 1819, [Aikin's Digest 243,] it will be perceived that the Circuit Courts are invested with jurisdiction over all criminal matters whatsoever, " whether brought before them by original or mesne process, or by *certiorari,* writ of error, appeal from any inferior court, or by any other way or means whatsoever." These courts, by this act, are also invested with all the powers previously appertaining to the Superior Courts, which, by the first section of the act of 1807 (Aikin's Digest 243 ; S. 19.) were expressly authorized to examine and correct the errors of all inferior courts, and to effect this end, they are authorized to issue writs of error, *certiorari,* and all other remedial writs.

The jurisdiction thus given, is not a discretionary one, to be exercised or declined at mere pleasure. The laws and constitution of this State, have wisely provided for the establishment of appellate tribunals and if inferior courts, in the course of their proceedings, commit errors affecting the life of persons, or property of individuals, those which are superior in grade are required to apply the corrective power by reversing or amending their judgments.

2. Should a judge of a Circuit Court in the exercise of his judgment refuse, (in a proper case and where error was shown to exist,) to give a remedial writ to review the proceedings of a tribunal inferior in grade to the Circuit Court, it would be the duty of this court to prevent a failure of justice by awarding a *mandamus,* under the power conferred by the 2d section of the fifth article of the constitution.

3. In cases like this, where the statute has provided no means by which to remove the case to an appellate tribunal, the writ of *certiorari* is the appropriate remedy, and should be allowed

John, a slave v. The State.

wherever there exists any reasonable doubt of the regularity of the proceedings sought to be reviewed.

4. The powers vested by the acts of 1807 and 1819, are in no manner divested by the act of 1832, under which the proceedings were instituted, nor does its last section prevent the exercise of the revisory powers of the Circuit Court. It is true the judges of the special courts are required to fix the time for execution within ten days from the sentence, but a writ of *certiorari* once allowed is a *supersedeas* of the sentence, until it is quashed, or the inferior court directed to go on, by writ of *procedendo*.

5. It would always be correct, to insert a special clause, in the writ of *certiorari*, when allowed, to direct it so to operate; and if necessary, to direct a special writ of *supersedeas* to the sheriff to refrain from execution until the case was heard and determined. To claim for these tribunals an exemption from review, would be to give a potency to their judgments, which the sentences of the Circuit Courts do not possess,—an anomaly which could scarcely be tolerated in a well regulated community; we entertain no question of the power of the Circuit Courts to review the proceedings and judgments of these special courts on *certiorari*, nor of their duty to supersede the execution of the sentence in these cases which require examination and revision.

As this court has no jurisdiction of this case, in the aspect in which it is now presented, the *certiorari* was improvidently issued, and is therefore quashed.