# COMM'RS' COURT OF LOWNDES CO. *vs.* BOWIE.

## [PROCEEDING FOR ESTABLISHMENT OF PUBLIC ROAD.]

1. *When appeal lies.*—When the proceedings of the commissioners' court, in the matter of the establishment or change of a public road. are removed by *certiorari* to the circuit court, and there reversed, an appeal to the supreme court may be prosecuted in the name of the commissioners' court.

2. *Jurisdiction of commissioners' court in establishment or change of public road.*—The jurisdiction of the commissioners' court, in the matter of the establishment or change of a public road, is dependent on these three things: 1st, an application to the court; 2d, thirty days' notice of the application, by advertisement at the court-house door and three other public places in the county; and, 3d, the location of the road within the county.

3. *Sufficiency of notice.*—It is not necessary that the record should affirmatively show by whom the notice was signed, nor what it contained, nor at what places it was posted up, nor how long it remained posted up: a simple recital in the record, that proof was made of the fact that thirty days' notice of the application had been given, by advertisement posted up at the court-house door and three other public places in the county, is sufficient.

4. *When decision of commissioners' court is revisable.*—In determining the expediency of a proposed establishment or change of a public road, the commissioners' court exercises a *quasi*-legislative authority, and does not act alone upon evidence produced according to legal rules, but is guided, to some extent, by its knowledge of the geography of the country, the wants and wishes of the people, and the ability of the neighborhood to keep the road in repair; and its decision on the question of expediency is not revisable in an appellate court.

5. *Petition and pleadings.*—Although a petition is necessary, which should properly allege such a state of facts as would seem to make it expedient to grant the proposed change of road; yet a demurrer does not lie to the petition, on account of the supposed insufficiency of its allegations; and the overruling of such demurrer is, therefore, not revisable on error or appeal.

6. *Oath of jury.*—A recital in the report of t he jury of viewers, that before acting under their commission they took a specified oath, which corresponds with the requisitions of the statute, is at least *prima-facie* evidence of the fact that they were so sworn.

7. *Waiver of objection to jurors* —If the contestant is present in court when the jury of viewers is appointed, and also when their report is returned, and does not object to their competency, he cannot raise the objection in the appellate court, that the record describes them as as " disinterested freeholders," instead of " householders."

8. *Report of jury, and action of court thereon.*—If the report of the jury of viewers is irregular, the court not only has authority, but it is its duty, to set aside the report, and appoint another jury, to consist of the same or other persons.

9. *Validity of order establishing road at costs of applicant.*—An order establishing or changing a public road is not vitiated by a requisition that the applicant shall give bond, with surety, conditioned that he will open it at his own expense; nor can the contestant complain of such requisition.

10. *Route of road determined by court and jury.*—Although the statute contemplates that the jury shall mark out the route of the road, yet it is the province of the court to direct the location as definitely as possible without an actual inspection of the ground; consequently, it is no objection to the order that it directs the jury to lay out the road along a certain section line, extending a specified number of feet on each side.

11. *Constitutionality of public-road law.*—The public-road law of this State, in providing for the assessment of damages to the person through whose lands any road is opened, and securing the payment of such damages before the property is taken, (Code, §§ 1136–38,) meets the constitutional requisition that "just compensation be made" for private property taken for public use; and when a public road has been changed or established by an order of the commissioners' court, the appellate court cannot revise the discretionary power vested in that tribunal, on the ground that its action was not for the public benefit.

APPEAL from the Circuit Court of Lowndes.
Tried before the Hon. NAT. COOK.

In this case, the commissioners' court of Lowndes county, on the application of J. H. Robertson and others, granted an order changing one of the public roads of the county. The application was contested by Samuel W. Bowie, who was made a party to the proceedings for that purpose, and who removed the proceedings by *certiorari* into the circuit court. On the errors assigned in the circuit court, that court reversed the judgment and decree of the commissioners' court, and quashed its proceedings. An exception was reserved to the rulings and judgment of the circuit court, and the same are here assigned as error. The material facts of the case will be readily understood from the opinion of the court.

BAINE & NESMITH, and J. F. CLEMENTS, for appellant.
WATTS, JUDGE & JACKSON, with GEO. S. COX, *contra.*

A. J. WALKER, C. J.—The appellee objects, at the threshold of this case, that the court of county commissioners cannot prosecute an appeal to this court. In the Commissioners' Court of Talladega County v. Thompson,

15 Ala. 134, it was decided, in a controversy as to the establishment of a road, that a writ of error might be taken in the name of the commissioners' court; and in the Commissioners' Court of Russell County v. Tarver, 25 Ala. 480, this court took jurisdiction of an appeal by the commissioners' court in a similar controversy. These decisions are conclusive, in favor of the right of the court of county commissioners to appeal from a judgment of the circuit court, reversing an order of the court of county commissioners for the establishment or change of a public road.

[2.] Three things are requisite to give the court of county commissioners jurisdiction over the matter of the change or establishment of a public road. Those things are, an application to the court, thirty days notice of the application, given by advertisement at the court-house door and at three other public places in the county, and the location of the road within the county. An order establishing or changing a road can only be sustained, when those three facts affirmatively appear from the record.—Commissioners' Court of Talladega v. Thompson, 15 Ala. 134; S. C., 18 ib. 694; Code, §§ 1131, 1132.

The minutes of the court of 3d November, 1856, affirm that on that day one Robertson presented a petition, subscribed by himself and forty-two others. The petition is copied on the record, and prays the specified change in a public road. It thus appears affirmatively from the record, that the application contemplated by section 1131 of the Code was made.

[3.] The minutes of the same date also affirm, that it appeared by proof made that thirty days notice *of the application* had been given, by advertisement posted up at the court-house door and at three other public places in Lowndes county, according to law. This assertion of the record shows a literal compliance with section 1132 of the Code, in the matter of notice. It is objected to this apparently full and sufficient assertion of the record, that it fails to show by whom the notice was signed, or what it contained, or how long it remained posted up, or at what places it was posted up. The contents of the

notice sufficiently appear in the assertion that notice of *the application* was given. It was only necessary that there should be notice of *the application*. There was no necessity for a designation of the public places at which the notices were posted up; it is enough that they were posted up at public places. The 'statute does not specifically direct by whom the notices should be signed. It would be a criticism upon the record, unfair and unnecessarily severe, for us to intend, either that the notice was so signed as not to give a fair manifestation to the community of the intended application, or that the notice, after being posted up, was pulled down, so as to prevent the fair and *bona-fide* notification intended by the law. We do not wish, however, to be understood as intimating, that the notice would be vitiated, even if the advertisements stuck up at public places had been pulled down.

The petition for the change of the road, and the written application of the appellee to be made a contesting party, and the minutes of the court, at February term, 1857, all show that the road was in Lowndes county. It thus appears, that all three of the requisite jurisdictional facts are affirmatively shown by the record.

[4.] Several objections to the petition were made before the court of county commissioners, by way of demurrer, and the demurrer was formally overruled. Upon the question of the expediency of opening or altering a public road, that court exercises a *quasi*-legislative authority, and its decision is not revisable. In the exercise of that authority, it does not act alone upon evidence produced according to legal rules, but is guided, to some extent, by its knowledge of the geography of the county, the wants and wishes of the people, and the ability of the neighborhood to keep the road in repair.—Hill v. Bridges, 6 Port. 197 ; West River Bridge v. Dix, 16 Verm. 446 ; Hollins v. Patterson, 6 Leigh, 457 ; 6 Wend. 564 ; 10 Pick. 358 ; 4 Halst. 209.

[5.] It is impossible, therefore, to prescribe any state of facts, which, being alleged and proved, give to the applicant a legal right to have a public road opened or altered. The law pronounces no judgment upon allega-

tions made, for or against an application; and pleading would, therefore, be altogether out of place. The law neither requires the court to grant an application, because of the fullness and sufficiency of the allegations of the petition, nor to refuse it because of their insufficiency. The court acts upon its convictions of expediency and policy. The petition required by section 1132 of the Code is not pleading upon which the proceeding is based. The law simply requires that it should be a petition for the establishment or alteration of the road. It is not *necessary* that it should contain any allegations, though it would be *proper* that it should state such facts as would seem to make it politic to grant the prayer of the petition. The demurrer to the petition presented no issue which belonged to the case, and it was totally immaterial what judgment the court pronounced upon it.

[6.] We cannot sustain the objection, that the taking by the viewers of the oath prescribed in section 1134 of the Code is not shown by the record. The viewers state, in their report, that before acting under their commission, they took before a designated justice of the peace an oath which conforms precisely to the requirement of the statute. The taking of the oath by the viewers is a duty imposed upon them; and their report that they have taken it, must be deemed at least *prima-facie* evidence of the fact. It is a part of their proceedings under the appointment, and is, like the rest of their proceedings, a proper subject of report.

[7.] The record states, that the seven viewers were "*disinterested freeholders.*" The statute (Code, § 1133) requires that they should be "*disinterested householders.*" The record, therefore, does not conform to the statute in this, that it shows the appointment of "*freeholders,*" instead of "*householders.*" The requisition that householders should be appointed, goes to the regularity of the proceeding, and not to the jurisdiction of the court: it is not one of the matters upon which the jurisdiction depends, as appears in a previous part of this opinion. The contestant may, therefore, waive the objection, so far as he is concerned. At the time when the jury of viewers

was appointed, and thence forward, the party who carried the case by *certiorari* into the circuit court, was before the court of county commissioners as a contestant. Upon the return of the report, the contestant made three specific objections to it; but did not object on the ground that the viewers were not householders. By the failure to object in the primary court that the viewers were not householders, the contestant waived the point. The practice which requires the objection to be made in the primary court, is commendable for its justice and fairness; because the deficiency or inaccuracy in the proceeding could be easily remedied. Besides, that practice is well supported by authority.—Long v. Comm'rs' Court, 18 Ala. 482; Molett v. Keenan, 22 *ib.* 484; Commonwealth v. Inhabitants of Westboro', 3 Mass. 406; Inhabitants of Rutland v. County Comm'rs of Worcester, 20 Pick. 71.

Upon this principle of practice, the result in Keenan v. Comm'rs' Court, 26 Ala. 568, ought, perhaps, to have been different; but the point was not considered by the court, and does not appear to have been in any way called to its attention. It is, therefore, not an authority adverse to our position.

[8.] The court of county commissioners set aside the report of the majority of the first jury of viewers, there being an adverse minority report. The court thereupon appointed another jury of viewers, and afterwards set aside its report, because of its alleged irregularity. The court then re-appointed the viewers last named, and upon the coming in of their report, confirmed it. It is argued, that the court had no power to proceed farther after the reception of one report. We have no doubt, that the court not only has the authority to set aside a report which is irregular, and to reappoint the same viewers, or appoint others, but that it is its duty to do so. But in this case the report of the majority of the viewers first appointed, and the two reports of the viewers last appointed, were, so far as the location of the road was concerned, identical; and it is impossible that the contestant could have been injured by any of the proceedings subsequent to the report of the viewers first appointed.

[9.] The court required Robertson, the applicant for the change in the road, to give bond, with surety, to make the new road, and put it in as good order as was the old road, with his own hands, without calling upon the road-workers. This order was not prejudicial to the contestant. The only person who could be injured by it was the applicant. It cannot vitiate the order directing the change of the road, as it merely prescribes the instrumentality by which the change was to be effected. We cannot infer that the court shut its eyes to considerations of public interest, because it required the applicant to make the road and put it in order.

[10.] Section 1133 and 1134 of the Code certainly contemplate that the viewers should mark out the route of the road. This power of the viewers we do not understand to conflict with the authority of the court to designate the location of the road. On the contrary, it is the province of the court to direct the location, as definitely as may be, without an actual inspection of the ground; and it is the duty of the viewers, in pursuance of such direction, to mark out the precise geographical position of the route. Often there is a margin for the exercise of discretion by the viewers in locating the road between points designated by the court; but it can be no objection that the court has so minutely designated the route that there is left a very small margin for the discretion of the viewers. We decide, therefore, that the proceedings of the court below were not defective because the viewers were directed to lay off the road extending in width a certain number of feet on each side of a certain section line.

[11.] It is argued, that the law authorizing the change and establishment of roads is unconstitutional, in this, that it permits the taking of private property for public use, without just compensation made therefor.—Constitution of the State of Ala., Art. 1, § 13. Sections 1136, 1137 and 1138, clothe the owner of land, within six months after a road is opened upon it, with the right to have an assessment of his damages by a prescribed legal proceeding, and direct payment to be made out of the county

treasury. The assessment of damages is thus provided for, and the payment of them secured with certainty, before the property is taken for the public use; and these rights the owner may enforce as soon as the property is taken. We regard the numerous decisions upon the subject as having established a construction of the constitutional provision, which upholds the validity of a law, authorizing the taking of private property for public use, where the assessment of damages is thus provided for, and their payment thus secured.—Bloodgood v. M. & H. R. R. Co., 18 Wend. 9; Smith v. Helmer, 7 Barb. Sup. C. R. 416; People v. Hayden, 6 Hill, 359; Hooker v. N. H. & N. Co., 14 Cow. 146; 2 Kent's Com. 339; Sedgwick on Stat. & Const. Law, 825; Bates v. Cooper, 5 Ohio, (Ham.) 118; Jackson v. Winn, 4 Littell, 323; 20 Johns. 744.

The argument is made, that the court did not change the road for the public use or benefit, but for the benefit of the applicant; and that, therefore, the constitutional right of the contestant, that his property should only be taken for public use, has been violated. It is a sufficient reply to this argument, that it does not appear that the court did not order the change of the road for the public use; nor does it appear that the road was laid out for the private use of the applicant, nor that the court omitted to consult for the public good in its action. The court, as we have already said, in determining whether a public road, which is a road for the public use, should be changed, exercised a *quasi*-legislative, or discretionary power, which we cannot revise.

The judgment of the circuit court is reversed, and the judgment of the court of county commissioners affirmed; and the appellee must pay the costs of this court, and of the circuit court.